IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>APPLE INC.<br><br>            Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 et seq. in which Plaintiff Sentius International, LLC ("Sentius" or "Plaintiff") brings this patent infringement action against Defendant Apple Inc. ("Defendant" or "Apple") and alleges as follows:

**NATURE OF THE ACTION**

1.    This is an action for patent infringement which arises under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285, to prevent Defendant from infringing and profiting without authorization and consent from Sentius by its use of the technology covered by U.S. Patent No. RE43,633 (the "'633 Patent", attached hereto as Exhibit "A") and U.S. Patent No. 7,672,985 (the "'985 Patent", attached hereto as Exhibit B") and to recover damages, attorney's fees, and costs pursuant thereto.

**THE PARTIES**

2.    Plaintiff Sentius is a limited liability company duly organized and existing under the laws of Virginia with its principal place of business at 1765 Greensboro Station Place, Tower

1

I, Suite 900, McLean, VA, 22102.

3. On information and belief, Apple Inc. is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California 95014.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a) because the action arises under the Patent Laws of the United States, 35 U.S.C. §§ 271 et seq.

5. This Court can exercise personal jurisdiction over Apple in this action because Apple has committed acts of infringement and/or inducement of infringement in this District, because Plaintiffs' claims arise out of and relate to Apple's acts of infringement and/or inducement of infringement in this District, and because the exercise of jurisdiction by this Court over Apple in this action would be reasonable. Accordingly, Apple has minimum contacts with this District such that the maintenance of this action within this District would not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b) because Apple has a regular and established place of business in in this District and has committed acts of infringement in this District via its regular and established place of business in this District.

## BACKGROUND

7. Apple was a highly valued customer and partner of Sentius Corporation, the predecessor in interest to Plaintiff Sentius International, LLC.

8. The Apple "Newton" was a personal digital assistant device that Apple developed prior to the iPhone. Sentius was invited to be part of the Newton developer program.

9. Sentius Electronic Book Player was an electronic document browser which enabled electronic books published in the "EB" format to be played on Macintosh computers. Sentius was the official developer of the Macintosh version as licensed by Sony. Apple bundled the Sentius EB Player application with all home computers shipped in Japan (i.e. the Performa line) in the 1996-1998 time period. The EB Player did not include RichLink technology but had advanced search functions which were uncommon to digital documents at that time.

10. Sentius produced a digital content series called "Epistola" which was a series of RichLink enabled books. Apple helped promote Epistola during this time period by including marketing literature about the product within the Macintosh Performa product box and packaging materials. The inclusion of a product brochure in the packaging a Macintosh product was extremely difficult to do and was only allowed for products which met certain standards of quality and novelty which Apple demanded.

## DEFENDANT'S PRODUCTS

11. The Apple products accused of infringing the '633 patent ("'633 Accused Products") provide a specific accused functionality (a/k/a "red squiggly" spell check feature) that identifies and marks misspelled words in a document and respectively links each misspelled word to at least one suggested correct spelling associated with the misspelled word from a spell check dictionary. The accused functionality displays an image of the document text (with the misspelled word/s marked), allows a user to select a marked misspelled word for which the user wishes to see the suggested spelling corrections, and retrieves the linked suggested spelling from the spell check dictionary for that marked misspelled word, and displays the suggested spelling near the misspelled word.

12. The Apple products accused of infringing both the '633 patent and the '985 Patent ("'633 and '985 Accused Products") provide the accused functionality using a syndicated spell check dictionary that represents the latest information from a master spell check database.

13. The '633 Accused Products include Apple's iOS Devices such as Apple's iPhone 5, iPhone 5S, iPhone 5C, iPhone 6, iPhone 6 Plus iPad mini, iPad 3rd Gen, iPad 4th Gen, iPad Air, iPad Air 2, iPad Mini 2, and iPad Mini 3, having certain applications that provide, in conjunction with the operating system, the accused functionality. Examples of such applications include "Mail", "Messages", and "Notes." The '633 Apple Accused Products also include Apple's Mac devices such as Mac Pro (Mid 2012), MacBook Air (Mid 2012), MacBook Pro (Mid 2012), MacBook Pro with Retina display (3rd gen) (15") (Mid 2012), MacBook Pro with Retina display (3rd gen) (Early 2013), Mac Mini (Late 2012), MacBook Pro with Retina display (3rd gen) (13") (Late 2012), iMac (21.5") (Late 2012), iMac (27") (Late 2012), MacBook Air (Mid 2013), MacBook Air (Early 2014), MacBook Pro with Retina display (Late 2013), MacBook Pro with Retina display (Mid 2014), Mac Pro (Late 2013), Mac Mini (Late 2014), iMac (Early 2013, Education Only), iMac (Late 2013), iMac (21.5 inch, Mid 2014), and iMac (27-inch, Retina, Late 2014) having certain applications that provide, in conjunction with the operating system, the accused functionality. Examples of such applications include "TextEdit", "Mail", and "Safari." Also accused is the Apple Safari application for Windows platform (collectively, the "Accused Device Applications").

14. The '633 and '985 Accused Products include certain Apple Online Applications such as iCloud Keynote and iCloud Pages, iWork –Pages (versions 5 and 5.5.1– Mac App Store), and iWork – Keynote (versions 6 and 6.5 - Mac App Store) (collectively the "Accused Online

Applications") which are made, used, sold or offered for sale within the United States or imported into the United States.

15. The Accused Online Applications such as Apple Pages and Keynote are online software platforms that allow customers to log in to their iCloud account and access "Pages" or "Keynote" document to review and make the changes on-the-go and share the revised and edited documents with other collaborators. Essentially, Pages and Keynote for iCloud offer full-fledged text editing platforms on the web which also offer spell checking functionality among other features which the users can make use of to perform spell checking and update their documents.

16. On information and belief, the Accused Online Applications are part of a system that includes Apple servers and the master term database that is syndicated via the spell check dictionary files. As set forth above, and on information and belief, the Accused Online Applications are maintained on Apple servers and are transmitted by Apple to user computers for operation thereon. Automatically transmitted along with Accused Online Applications are spell check dictionaries that are data objects which represent the latest content of a master term database maintained by Apple on Apple servers. The spell check dictionaries are used locally at the user computer by the Accused Online Applications in supplying and displaying the suggested spelling corrections.

17. The '633 Accused Products infringe at least claims 17, 18, 62, 101 and 146 of the '633 patent. The '633 and '985 Accused Products infringe at least the same claims of the '633 patent and also infringe at least claims 1 and 11 of the '985 patent.

## COUNT ONE
## INFRINGEMENT OF THE '633 PATENT

18. On September 4, 2012, the United States Patent and Trademark Office ("USPTO") duly and legally reissued the '633 patent, entitled "System and Method for Linking

5

Streams of Multimedia Data to Reference Material for Display" (the "'633 Patent."). A true and correct copy of the '633 patent is attached hereto as Exhibit A.

19. Sentius is the owner of the '633 patent, having received all right, title and interest in and to the '633 patent from the previous assignee of record. Sentius possesses all substantive rights in and to the patent, including the sole and exclusive right to prosecute this action and enforce the '633 patent against infringers, and to collect damages for all relevant times.

20. Defendant has infringed at least claims 17, 18, 62, 101 and 146 of the '633 patent by its manufacture, use, sale, importation, and/or offer for sale of: Apple's '633 Accused Products (iOS and Mac devices) incorporating Accused Device Applications such as "Mail", "Messages", and "Notes" (for iOS) and "TextEdit", "Mail", and "Safari" (for Mac); and the Accused Online Applications and System, and by encouraging others to use, offer for sale or sell such products and/or applications and/or system in the United States or from within the United States. Defendant Apple Inc. is liable for its infringement of the '633 patent pursuant to 35 U.S.C. § 271.

21. For example, claim 17 covers "A system for linking textual source material to external reference material for display." On information and belief, the '633 Accused Products include software instructions that link textual source material to external reference material and perform those instructions using a method of storing pointers in look-up table entries for the starting and ending position addresses for misspelled words or grammatically incorrect words. For example, the pointers link the misspelled words to the spell check dictionary which is an external reference material having correctly spelled replacements for the misspelled words. For example, the misspelled words are identified by highlighting with a red squiggly underline.

22.     Claim 17 then recites "means for determining a beginning position address of textual source material stored in an electronic database."  On information and belief, the '633 Accused Products include software instructions such as a document editor which assigns a zero position address to the first character of the document text.  For example, the document editor is equipped with a parser which identifies the text as discrete character strings.

23.     Claim 17 then recites "means for cutting the textual source material into a plurality of discrete pieces."  On information and belief, the '633 Accused Products include software instructions such as a parser that parses the document to cut the text into individual words and phrases.  These words or phrases are identified as discrete character strings.

24.     Claim 17 then recites "means for determining starting point addresses and ending point addresses of the plurality of discrete pieces based upon the beginning position address."  On information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions such as a parser that identifies the beginning and ending character position offsets for the misspelled words relative to the beginning position address of the potential misspelled word.

25.     Claim 17 then recites "means for recording in a look-up table the starting and ending point addresses."  On information and belief, the '633 Accused Products include software instructions that maintain a data structure within which the beginning and ending character offsets relative to the beginning position address of potentially misspelled words are respectively stored.  Upon information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions that highlight each potentially misspelled word with a red squiggly underline.

26. Claim 17 then recites "means for linking the plurality of discrete pieces to external reference materials by recording in the look-up table, along with the starting and ending point addresses of the plurality of discrete pieces, links to the external reference materials, the external reference materials comprising any of textual, audio, video, and picture information". On information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions that store in the data structure for each character offset range a pointer to the suggested spellings for the character string associated with that character offset range.

27. Claim 17 then recites "means for selecting a discrete portion of an image of the source material". On information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions that allow the user the option to click on the highlighted red squiggled misspelled word on the opened document through a touch interface.

28. Claim 17 then recites "means for determining a display address of the selected discrete portion". On information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions that identify the horizontal and vertical coordinates of the display location where the user's touch input was received.

29. Claim 17 then recites "means for converting the display address of the selected discrete portion to an offset value from the beginning position address." On information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions that convert the horizontal and vertical coordinates of the display location where the user's touch input was received into a character position offset value from the beginning position address.

30. Claim 17 then recites "means for comparing the offset value with the starting and ending point addresses recorded in the look-up table to identify one of the plurality of discrete pieces." On information and belief, as explained above, the '633 Accused Products and the '633 and '985 Accused Products include software instructions that compare the character position offset value from the beginning position address with the entries in the data structure to identify the corresponding entry.

31. Claim 17 then recites "means for selecting one of the external reference materials corresponding to the identified one of the plurality of discrete pieces." On information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions to resolve the pointer for the corresponding entry to identify one or more corresponding lexicon words from the spell check dictionary as suggested correct spellings for that particular entry's character string. On information and belief, for example, the Accused Products include a set of software instructions that retrieves and temporarily stores the identified lexicon words from the spell check dictionary for that character string for display to the user.

32. Claim 17 then recites "means for displaying on a computer the selected one of the one of the external reference materials." On information and belief, as explained above, the Accused Products' software instructions then retrieve the buffered lexicon words and display them as suggested corrections for that particular character string.

33. Claim 18 depends from independent claim 17, and covers "The system of claim 17, wherein the means for linking links the plurality of discrete pieces to external reference materials on a word-by-word or phrase-by-phrase basis." On information and belief, the '633 Accused Products and the '633 and '985 Accused Products include software instructions that maintain individual entries in the look-up table on a word-by-word basis.

34. In violation of 35 U.S.C. § 271, Defendant has been infringing the '633 patent.

35. Defendant has had knowledge of infringement of the '633 patent at least by July 21, 2015. On July 20, 2015, Plaintiff sent Defendant via Federal Express a binder containing a letter outlining the spell check technology developed by Sentius and covered by the '633 patent and how the Sentius technology has been and continues to be followed in Apple's spell checking engine, claim charts with annexures showing the same for Apple Mac OS Devices, Apple iOS Devices, and Apple Safari, and a copy of the '633 patent.

36. Defendant has infringed at least claims 17, 18, 62, 101 and 146 of the '633 patent by making, using, importing, offering for sale, and/or selling the Accused Products without authority in the United States. As a direct and proximate result of Defendant's direct and indirect infringement of the '633 patent, Plaintiff has been and continues to be damaged.

37. Defendant is also directly responsible for any infringing acts of its users, because it directs and/or controls the user's performance of those actions. On information and belief, Defendant makes the benefits of its spell check functionality conditioned on the user's performance of any steps that involve the user and establish the manner or timing of that performance through its design of the accused product's operation.

38. Defendant has also induced infringement of the '633 patent by providing the '633 Accused Products to users thereof and by aiding and encouraging the use of the accused functionality knowing the same to be an infringement of the '633 patent.

39. Defendant has committed these acts of infringement without license or authorization.

40. By engaging in the conduct described herein, Defendant has injured Sentius and is thus liable for infringement of the '633 patent, pursuant to 35 U.S.C. § 271.

41. As a result of Defendant's infringement of the '633 patent, Sentius has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for their past infringement, together with interests and costs.

42. Sentius and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law, including, but not limited to, 35 U.S.C. § 287.

## COUNT TWO
## INFRINGEMENT OF THE '985 PATENT

43. On March 2, 2010, the United States Patent and Trademark Office duly and legally issued the '985 Patent, entitled "Automated Creation and Delivery of Database Content" (the "'985 Patent"). A true and correct copy of the '985 Patent is attached hereto as Exhibit B.

44. Sentius is the owner of the '985 patent, having received all right, title and interest in and to the '985 Patent from the previous assignee of record. Sentius possesses all substantive rights in and to the patent, including the sole and exclusive right to prosecute this action and enforce the '985 Patent against infringers, and to collect damages for all relevant times.

45. Defendant has infringed at least Claims 1 and 11 of the '985 Patent by its manufacture, use, sale, importation, and/or offer for sale of a method and a system that comprises Apple servers, a master dictionary database, syndicated versions of that master dictionary database in the form of spell check dictionaries, and Accused Online Applications such as Pages and Keynote for iCloud and iWork –Pages (versions 5, 5.5.1, 5.6, 6, 6.1, and 7 – Mac App Store), iWork – Keynote (versions 6, 6.5, 6.6, 7, 7.1, and 8 - Mac App Store) that operate in the manner described herein (collectively "'985 Accused System"). Defendant Apple Inc. is liable for its infringement of the '985 Patent pursuant to 35 U.S.C. § 271.

46. For example, Claim 1 recites "syndicating one or more data objects associated with a term database to one or more remote computers, wherein the one or more data objects contain data associated with one or more terms." On information and belief, Apple transmits spell check dictionary files as data objects reflecting the latest content of a master term database for automatic use by Accused Online Applications. More particularly, whenever any of these application programs are running, the programs have locally available a spell check dictionary that was transmitted to the computer on which they are running for the programs' immediate use.

47. Claim 1 also recites "parsing one or more documents to identify at least one term based on at least one rule." On information and belief, Apple operates a system that uses the Accused Online Applications that parse a document using one or more grammar/parsing rules to identify the character strings and the starting and ending offset positions of the words and misspelled words contained therein.

48. Claim 1 recites "identifying content for the at least one term." On information and belief, the Accused Online Applications use the spell check dictionary to display suggested spellings (*i.e.,* character strings in the lexicon) that have been identified for various input character strings (e.g., "the" for "th"). Moreover, when a user indicates that he or she desires to see the suggested spellings for a given misspelled word, such as by right clicking or tapping on the word, the accused spell check functionality determines the character string of the user indicated word and passes that character string to identify character strings in the lexicon of the spell check dictionary as suggested replacements for the character string of the user indicated word. The parsing engine passes each of the parsed character strings to the spell check engine, which compares each received character string with the lexicon of known words in the spell check dictionary for that word or document's language. If the spell check engine determines that

the character string does not match the character string of any lexicon word, the spell check functionality identifies it as a potentially misspelled word and renders a red-squiggly underline beneath the misspelled word.

49. Claim 1 recites "associating the at least one term with the identified content." On information and belief, the Accused Online Applications associate the character string of a word identified as misspelled to the character string(s) of one or more suggested spellings in at least two ways. First, the character string is linked to the dictionary containing the suggested spellings (alternative character strings) for that particular character string from the spell check dictionary. Second, the Accused Online Applications use the spell check dictionary to access, retrieve and display the suggested spellings in a pop-up window next to the misspelled word, thereby associating the identified spellings for the word with the misspelled word.

50. Claim 1 then recites "wherein the one or more data objects associated with the term database provide a representation of at least a portion of the term database at the one or more remote computers and are used to link the identified content with the at least one term." On information and belief, the spell check dictionary used by the Accused Online Applications is a data representation of the lexicon maintained in the term database for the given dictionary's language and is used to link misspelled words in a document to their suggested spellings.

51. With regard to claim 11, the '985 Accused System Online Applications use data objects in the form of spell check dictionaries that represent the latest content of master spell check databases.

52. Also with regard to claim 11, on information and belief, Accused Online Applications incorporate a parser provided by the operating system that identifies words in a document based upon rules (such as whether there is white space ahead of and behind the

character string or whether it matches a character string in the lexicon of the spell check dictionary) and a spell check module that identifies misspelled words in the document based upon other rules (such as whether the character string of the word does not match a word in the lexicon of the spell check dictionary) thereby constituting a system that includes "a term module for parsing one or more documents to identify at least one term based on at least one rule."

53. With regard to claim 11, on information and belief, the spell check dictionary identifies any suggested corrections for a given character string and thereby includes "a processing module for identifying content for the at least one term."

54. With regard to claim 11, on information and belief, the '985 Accused System incorporates a master spell check database that stores the identified spelling suggestion associated with given character strings which constitutes "a term database for storing the identified content in association with the at least one term."

55. With regard to claim 11, on information and belief, the '985 Accused System includes one or more spell check dictionaries that are transmitted to computers running the '633 and '985 Accused Products and used by such Accused Products to link misspelled words in a document to the suggested spelling corrections (substitute character strings) associated therewith identified in the spell check dictionary so they may be displayed thereby meeting the requirement of "wherein one or more data objects associated with the term database are syndicated to one or more remote computers for providing a representation of at least a portion of the term database at the one or more remote computers and for linking the identified content with the at least one term, wherein the one or more data objects contain data associated with one or more terms."

56. In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing the '985 Patent.

57. Defendant has had knowledge of infringement of the '985 Patent at least by June 27, 2018. Plaintiff further notified Defendant Apple's in-house counsel on June 27, 2018 with a letter asserting the '985 patent against Apple accompanied with claim charts and annexures for Apple's Pages for iCloud application, and a copy of the '985 Patent.

58. Defendant has infringed at least claims 1 and 11 of the '985 patent by making, using, importing, offering for sale, and/or selling the '633 and '985 Accused Products and the '985 Accused System without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct and indirect infringement of the '985 patent, Plaintiff has been and continues to be damaged.

59. Defendant is also directly responsible for any infringing acts of its users, because it directs and/or controls the user's performance of those actions. On information and belief, Defendant makes the benefits of its spell check functionality conditioned on the user's performance of any steps that involve the user and establishes the manner or timing of that performance through its design of the '633 and '985 Accused Products' operation and the '985 Accused System.

60. Defendant has also induced infringement of the '985 patent by providing the '633 and '985 Accused Products and making the '985 Accused System available to users thereof and by aiding and encouraging the use of the accused functionality knowing the same to be an infringement of the '985 patent.

61. Defendant has committed these acts of infringement without license or authorization. Moreover, the acts of infringement have been willful since Sentius apprised Apple of its infringement and Apple failed to take a license after it knew or should have known that a license was necessary.

62. By engaging in the conduct described herein, Defendant has injured Sentius and is thus liable for infringement of the '985 patent, pursuant to 35 U.S.C. § 271.

63. As a result of Defendant's infringement of the '985 patent, Sentius has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for their past infringement, together with interests and costs.

64. Sentius and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law, including, but not limited to, 35 U.S.C. § 287.

## PRAYER FOR RELIEF

WHEREFORE, Sentius prays for the following relief:

a. That Defendant be adjudged to have directly and indirectly infringed the '633 Patent and the '985 Patent either literally or under the doctrine of equivalents;

b. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from infringing the '985 patent;

c. An award of damages pursuant to 35 U.S.C. § 284 sufficient to compensate Sentius for the Defendant's past infringement of the patents-in-suit including compensatory damages;

d. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284; and

e. That Sentius have such other and further relief as this Court may deem just and proper, including enhanced damages pursuant to 35 U.S.C. § 284.

## **DEMAND FOR JURY TRIAL**

Sentius requests a trial by jury of any and all causes of action.

Dated: July 31, 2019                              Respectfully submitted,

*Of Counsel:*                                     **FARNAN LLP**

Sandeep Seth                                      */s/ Michael J. Farnan*
**SethLaw**                                       Brian E. Farnan (Bar No. 4089)
Two Allen Center                                  Michael J. Farnan (Bar No. 5165)
1200 Smith Street, Ste. 1600                      919 N. Market Street, 12th Floor
Houston, TX 77002                                 Wilmington, DE 19801
Telephone: (713) 244-5017                         Telephone: (302) 777-0300
Facsimile:  (713) 244-5018                        Facsimile:  (302) 777-0301
Email: ss@sethlaw.com                             bfarnan@farnanlaw.com
                                                  mfarnan@farnanlaw.com

Robert J. Yorio
**Carr & Ferrell LLP**
120 Constitution Drive
Menlo Park, California 94025
Telephone No.: (650) 812-3400
Facsimile No.:  (650) 812-3444
Email:  yorio@carrferrell.com

                                                  *Attorneys for Plaintiff Sentius International, LLC*